# Loss-Stair Engineering Inc. v.
# Bon-Ton Builders Inc.

538

*John Mooney,* for plaintiff.
*Douglas Gent,* for defendant.

GEORGE, *J.,* June 8, 2010—Appellant, Bon-Ton Builders Inc., challenges judgment entered against them and in favor of appellee, Loss-Stair Engineering Inc., following a non-jury trial. Based upon findings of fact memorialized by this court's order dated October 20, 2009, judgment was entered in favor of appellee and against appellant in the amount of $63,215.75. Judgment was also entered in favor of the appellee on appellant's counterclaim. After this court denied appellant's post-trial motions, this appeal follows.

Appellant is a professional corporation engaged in building and developing residential properties. Appellee, also a professional corporation, is in the business of offering professional civil engineering services. On or

about August 14, 2005, the parties entered into a written agreement for the development of a 75-acre tract of property to be known as the "Crosswinds" project. The contract required appellee to perform engineering services for the project at a contract price of $2,200 per lot. After the project commenced, several modifications by appellant required appellee to perform services not originally contemplated. Appellee subsequently submitted invoices to appellant for services claimed to have been performed. The amount of the invoices and services performed was disputed by appellant. In an effort to resolve, inter alia, the fee dispute, the parties met on September 21, 2007. As a result of the meeting, the parties reached an agreement resolving the Crosswinds fee dispute.

Concurrent with the Crosswinds project, the parties entered into an oral agreement wherein appellee would provide engineering services to appellant for a second development project known as "Twin Ponds." Ominously, the Twin Ponds project involved an anticipated subdivision of property for which appellant had entered an intent to purchase agreement with the property's owner, David Stair, who coincidently was a principal in appellee corporation. The intent to purchase agreement contained a fluctuating purchase price of $1,700,000 for a 34-lot development or $1,600,000 for a 33-lot development depending on the results of a feasibility study. The intent to purchase agreement was entered on January 14, 2006. On July 26, 2006, appellee submitted a 35-lot sketch plan to the appropriate municipal jurisdiction. Thereafter, on October 26, 2006, appellant entered into

a sales agreement with Stair for the purchase price of the property at $1,700,000.

On May 7, 2007, appellee submitted a preliminary subdivision plan to the relevant municipality. At approximately that same time, appellee contacted a firm to provide a preliminary hydrogeological study for the Twin Ponds subdivision. As a result of that contact, appellee learned for the first time that a preliminary hydrogeological study had been performed in 2006. The results of that study limited the number of lots in the proposed subdivision to 27.

At the previously referenced meeting of September 21, 2007, the parties also resolved outstanding issues concerning the Twin Ponds project including, inter alia, those related to the lot discrepancy. The resolution called for appellant to make payment to appellee in an amount of $3,750 per lot for a 27-lot Twin Ponds subdivision in exchange for engineering services at the property. On that same date, appellant paid appellee $10,354.70 for the Twin Ponds project as discussed and agreed between the parties.

In reliance upon the September 21, 2007 agreement, appellee provided services for the Twin Ponds subdivision approval. Subsequent reluctance by appellant to pay for the services rendered has resulted in a termination of the parties' relationship and failure to obtain the final subdivision approval for the Twin Ponds project. This court determined that the value of the services provided by appellee upon the parties' previous agreement totaled $98,010.81 plus reimbursable expenses in the amount of $7,359.64. Judgment was entered in that amount minus

a credit for sums previously paid by appellant. Appellant currently challenges the judgment arguing that it is against the substantial weight of the evidence. In support of the claim, appellant raises 18 allegations of error allegedly committed by the court in weighing the evidence.

The scope of review of a verdict entered in a non-jury case is limited to determining whether its factual findings are supported by evidence or whether the court made a legal error. *Hester v. Pennsylvania Financial Responsibilities Signed Claims ACP,* 743 A.2d 926 (Pa. Super. 1999). A judgment n.o.v. may only be properly entered by a court in a clear case where all reasonable minds would agree that the verdict is improper even after the verdict winner has been given the benefit of every available inference of fact arising from the evidence. *Fitzpatrick v. Natter,* 599 Pa. 465, 961 A.2d 1229 (2008). Importantly, the trial court's assessment of the credibility of witnesses is binding absent an abuse of discretion. *Thatcher's Drug Store of West Goshen Inc. v. Consolidated Supermarkets Inc.,* 535 Pa. 469, 477, 636 A.2d 156, 160 (1994). An abuse of discretion does not occur where there is a mere difference of opinion regarding an interpretation of the facts; rather, an abuse of discretion is found only in flagrant cases where there is not a substantial ground for a difference of opinion. *Viener v. Jacobs,* 834 A.2d 546, 556 (Pa. Super. 2003). Where the trial court sits as the finder of fact, the trial court's findings are controlling unless those findings are not based upon competent evidence. *Id.,* 834 A.2d at 554. The weight to be assigned to the testimony of the witnesses and credibility determinations are within the exclusive

province of the trial court as the court is free to believe all, part, or none of the evidence presented. *Mackay v. Mackay,* 984 A.2d 529 (Pa. Super. 2009).

A review of the appellant's allegations of error reveals that the majority of those allegations do not challenge this court's factual findings as being unsupported by sufficient evidence but rather challenge this court's failure to make certain findings suggested by appellant. Specifically, 16 of the 18 challenges claimed that the court "erred in failing to find" or "failed to consider" evidence which appellant apparently thought to be important. Each of these claims are meritless in light of the well-settled law cited above which instructs that the trial court, sitting as fact-finder, is free to believe all, part, or none of the evidence presented. See also, *Stokes v. Gary Barbera Enterprises Inc.,* 783 A.2d 296, 297 (Pa. Super. 2001), *appeal denied,* 568 Pa. 723, 797 A.2d 915 (2002). Appellant mistakenly concludes that this court failed to consider testimony when, to the contrary, this court considered all of the testimony however found the testimony of appellant's witnesses to lack credibility on several key points. Thus, appellant does nothing more than improperly challenge this court's credibility determinations. The apparent difference of opinion as to what evidence was credible, and therefore deserving of weight, is not an appropriate basis to overturn the verdict. See *Viener v. Jacobs, supra.*

Appellant's remaining two challenges are equally meritless. Appellant claims that the court erred in finding as fact that the preliminary hydrogeological study conducted prior to June 30, 2006 was unknown by appellee

until late May or early June of 2007. Contrary to appellant's claim, the record amply supports this court's conclusion concerning appellee's first knowledge of the existence of the hydrogeological study. See trial transcript, pp. 17, 59, and 68. Observing the demeanor of the witnesses during the course of trial, this court found appellee's testimony credible. As this testimony supports the court's findings of fact, appellant's claim lacks merit. In reality, it is nothing more than a camouflaged attempt at requesting an appellate court to improperly make factual findings contrary to the credibility determination of the fact-finder.

Similarly, appellant's claim that the court's finding as to the terms of a September 21, 2007 settlement agreement are unsupported by the record is equally meritless. Exhibits introduced at trial clearly support this court's factual finding. See exhibit F and exhibit G. Incredulously, appellant's own pleadings support this court's finding. In paragraph 44 of appellant's answer and new matter, appellant alleges that the terms of the parties' September 21, 2007 agreement are reflected in a letter attached to the pleading as an exhibit (trial exhibit G). The exhibit reflects that appellant agreed to sign a revised contract for the Twin Ponds project in the amount of $101,250 which, incidentally, is the amount calculated in trial exhibit F (a calculation of 27 developed lots at $3,750 per lot totaling $101,250). Appellant's allegation was admitted in appellee's answer to new matter thereby conclusively establishing this issue. See *Gibbs v. Herman,* 714 A.2d 432 (Pa. Super. 1998) (averments in the pleadings constitute binding judicial admissions, conclusive in their nature). Thus, appellant's claim that this

court erred in accepting as fact an affirmative admission in appellant's pleading is ludicrous.

Notably, the volume of allegations raised by appellant does not overcome their lack of merit.[1] As the factual findings of this court are supported by the record, it is respectfully requested that the judgment be affirmed.

---

1. In *Estate of Lakatosh,* 441 Pa. Super. 133, 136 n.1, 656 A.2d 1378, 1380 n.1 (1995), a panel of the Superior Court quoted with approval the following observation from *United States v. Hart,* 693 F.2d 286, 287 n.1 (3d Cir. 1982):

"With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court, it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors . . . . [W]hen I read an appellant's brief that contains 10 or 12 points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not by loquaciousness."